# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1157-24

IN THE MATTER OF THE
SEIZURE OF THE FIREARMS/
WEAPONS FROM G.D.P.

_____

Submitted April 23, 2026 – Decided July 31, 2026

Before Judges Marczyk and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FO-20-0191-24.

Evan F. Nappen, Attorney at Law, PC, attorneys for appellant G.D.P. (Louis P. Nappen, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent State of New Jersey (Meredith L. Balo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

G.D.P.[1] appeals from a November 12, 2024 Family Part order forfeiting

title to two weapons and revoking his Firearms Purchaser Identification Card

---

[1] Because this matter contains allegations of domestic violence, we use initials to preserve the confidentiality of the proceedings. R. 1:38-3(d)(9).

(FPIC). Having reviewed the record, the parties' arguments, and the applicable legal principles, we affirm the forfeiture but remand for entry of a provision allowing G.D.P. to arrange for the transfer or sale of the firearms to an appropriate person.

## I.

G.D.P. and G.P. were married in 2004 and have two children together. In 2019, G.P. was granted a temporary restraining order (TRO) against G.D.P. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Following a hearing, the TRO was dismissed in January 2020 as not substantiated. G.D.P.'s two firearms, which had been seized because of this TRO, were returned to him after the parties' May 2021 divorce.

On April 30, 2024, G.P. was granted a second TRO against G.D.P. based on harassment stemming from a conversation between G.D.P. and the parties' minor daughter, L.D. G.D.P.'s two firearms were again seized as a result of the TRO. The TRO was voluntarily dismissed in May 2024.

Notwithstanding the dismissal, the State moved for forfeiture of G.D.P.'s seized firearms. As detailed in the court's November 12, 2024 statement of reasons, both G.P. and G.D.P. testified during the hearing. G.P. testified their relationship was "volatile in that G.D.P. was aggressive, was controlling and

2

jealous[,] and would argue over the most insignificant of issues." G.P. recounted several such incidents spanning their relationship, including the following:

- In 2001, G.D.P. pushed his father during an argument with his sister, resulting in his father suffering bruised ribs;

- In 2003, G.D.P. confronted and argued with G.P.'s brother about the brother parking his car in G.P.'s parking space;

- In 2005, G.D.P. grabbed G.P. by her ankle as she ascended the stairs during an argument, then pinned her against the wall and screamed at her;[2]

- In 2017, G.D.P. was driving with G.P. and their children when another motorist tried to cut him off, which caused G.D.P. to accelerate and rear-end a vehicle, resulting in bruises to G.P.'s legs;

- In 2018, G.D.P. confronted a neighbor about tree branches, which escalated into G.D.P. chasing the neighbor around the two lawns;

- In 2019, G.D.P. was aggressive with G.P., which resulted in the first TRO;

- In 2024, G.P. received a text message from L.D., who was upset about a conversation she had with G.D.P., which resulted in the second TRO; and

---

[2] Although the court's opinion notes the "pinning" incident occurred in 2019 separate from the 2005 incident, G.P.'s testimony indicates they were part of the same 2005 incident.

A-1157-24

- In 2024, while awaiting the TRO hearing outside the courtroom, G.D.P. repeatedly sat behind G.P. and stared at her.

G.P. also testified regarding G.D.P.'s discipline of their children, his increased aggression after he began testosterone therapy and taking related supplements, and her belief G.D.P.'s behavior posed risks not only to herself, but also to their children.

G.D.P. testified the incidents cited by G.P. were "stale," no acts of physical violence or credible threats had occurred in recent years, the incidents were minor disputes, and there was no violent escalation or intent. G.D.P. also maintained his testosterone therapy was a medically prescribed treatment for low testosterone levels, and he denied any connection between the therapy and his alleged aggression. Lastly, G.D.P. noted since the return of his firearms in 2021, there were no new allegations of violence or domestic abuse to justify forfeiture of his firearms.

The court made detailed findings, including:

> G.P. was credible in that she was prepared to answer the questions presented by the State, [on] cross[-] examination by defense counsel and the [c]ourt. She maintained good eye contact, was genuine in her testimony as to what she knew and what she did not know; [and] was appropriate in her demeanor—did not exaggerate or become inappropriately emotional. She was measured in her testimony and candid with the

A-1157-24

[c]ourt. She appeared to be visually fearful of G.D.P. and concerned for her safety as well as the safety of her children. While the [c]ourt recognizes the decision made by the State to not produce a minor to testify against a parent, the significance of the complaint for a TRO is not lost on the [c]ourt and the [c]ourt does not believe G.D.P. when he testified that the import of his comments to his daughter was to teach her about personal safety[, which was] misinterpreted by her.

G.D.P. also testified. His demeanor was one of a "wise[]guy." While he acknowledged every prior incident that was testified to by G.P., he downplayed every incident; denied accountability for his involvement in the incident involving his family or G.P.'s family. While these past incidents ([pushing] 2001, parking incident 2003 and road rage 2016/2017) are more than seven . . . years ago, the [c]ourt is genuinely concerned with G.D.P.'s version of the conversation with his daughter L.D. which le[]d to the filing of the TRO. L.D. was [thirteen] years of age at the time of the conversation. Had the version of the conversation been more in line with G.D.P.'s version of same, the [c]ourt has to question the intent of commenting on . . . G.P.'s single status other than to let L.D. and ultimately G.P. know that he is watching her in the way in which she is "advertising" herself and that he has a problem with her in the way she is living her life. G.D.P.'s choice of words and alleged way of "teaching" his daughter about personal safety le[]d this [c]ourt to conclude that he is a threat to the community, especially G.P.

G.D.P.'s decision to sit next to G.P. or in close proximity of G.P. outside the [c]ourtroom, again is an action by G.D.P. to intimidate G.P.

5

A-1157-24

In analyzing the applicable statutory provisions, the court found the State failed to present competent evidence to warrant forfeiture under N.J.S.A. 2C:58-3(c)(3), which requires proof of a physical defect, disease, or substance use disorder that would make it unsafe for the person to handle firearms. The court noted the lack of medical or pharmacological evidence regarding G.D.P.'s steroid use and its effects and found his steroid use in prior years was not persuasive to satisfy a finding under N.J.S.A. 2C:58-3(c)(3).

However, the court found the State met its burden under N.J.S.A. 2C:58-3(c)(5), which authorizes the forfeiture of firearms if returning them would not be in the best interest of public health, safety, or welfare. The court reasoned:

> G.D.P.'s past history of domestic violence, inability to take responsibility for his actions, inability to defuse a situation, [and] his lack of self-awareness in his words and actions lead this [c]ourt to determine that the State has met its burden of proof by a preponderance of the evidence that to return the weapons to G.D.P. would be a threat to the public health, safety[,] and welfare, again especially to G.P.

Thus, the court ordered forfeiture of G.D.P.'s firearms and FPIC.

On appeal, G.D.P. presents the following issues for our consideration:

POINT I.

IN OFFENSE TO DUE PROCESS, THE FIFTH AMENDMENT'S TAKINGS CLAUSE, AND N.J.S.A. 2C:25-21(d)(3), THE COURT BELOW ERRED BY

6

FAILING TO ORDER THAT APPELLANT MAY ARRANGE FOR THE TRANSFER OF HIS FIREARMS THAT WERE SEIZED FOR SAFEKEEPING TO A LICENSED FIREARMS DEALER.

POINT II.

THE COURT AND GOVERNMENT BELOW DENIED APPELLANT DUE PROCESS.

POINT III.

THE COURT BELOW ERRED BY FINDING THAT APPELLANT POSSESSED AN ASSAULT RIFLE AND, APPARENTLY, BY NOT UNDERSTANDING NEW JERSEY'S FIREARM STORAGE REQUIREMENTS.

POINT IV.

THE COURT BELOW ERRED BY FAILING TO MAKE A "CHARACTER OF TEMPERAMENT" FINDING AS ELEMENTALLY REQUIRED UNDER N.J.S.A. 2C:58-3(c)(5).

POINT V.

THE COURT BELOW ERRED BY BASING ITS DECISION UPON A "RESPONSIBLE PERSON" AND OTHER UNCONSTITUTIONAL STANDARDS, AND UPON ALLEGATIONS THAT DO NOT RISE TO THE LEVEL OF A REASON TO DENY APPELLANT'S SECOND AMENDMENT RIGHTS.

A-1157-24

POINT VI.

N.J.S.A. 2C:58-3(c)(5) AND (8) ARE UNCONSTITUTIONAL.

POINT VII.

IT IS RESPECTFULLY REQUESTED THAT ANY OPINION REFERENCE APPELLANT BY HIS INITIALS.

[(Citations reformatted).]

## II.

"We review a trial court's legal conclusions regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015). Appellate review of a trial court's factual findings in firearm licensure matters, however, is "limited." In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015). "Deference to a trial court's fact findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). As such, an appellate court should ordinarily "accept a trial court's findings of fact that are supported by substantial credible evidence." Id. at 116.

The State is empowered to seek forfeiture of firearms under the PDVA. N.J.S.A. 2C:25-21(d)(3). The PDVA's purpose is "to assure the victims of domestic violence the maximum protection from abuse the law can provide." In

re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 509 (2016) (quoting N.J.S.A. 2C:25-18). "Because the presence of weapons can heighten the risk of harm in an incident of domestic violence, the [PDVA] contains detailed provisions with respect to weapons." State v. Harris, 211 N.J. 566, 579 (2012).

The PDVA authorizes a judge to issue a TRO "to protect a victim of domestic violence and to enter an order authorizing the police to search for and seize from the defendant's home, or any other place, weapons that may pose a threat to the victim." State v. Hemenway, 239 N.J. 111, 116 (2019). "The State retains the statutory right to seek the forfeiture of any seized firearms provided it can show that [the] defendant is afflicted with one of the legal 'disabilities' enumerated in N.J.S.A. 2C:58-3(c)." State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004) (citation reformatted).

Thus, under the PDVA, "even if a domestic violence complaint is dismissed and the conditions abate, forfeiture may be ordered if the defendant is subject to any of the disabilities in N.J.S.A. 2C:58-3(c)" F.M., 225 N.J. at 510-11. One enumerated disability is when the defendant's possession of weapons "would not be in the interest of the public health, safety[,] or welfare

because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm." N.J.S.A. 2C:58-3(c)(5).

N.J.S.A. 2C:58-3(c)(5) is the "broadest" of the disqualifications for possession of a firearm and FPIC, In re Carlstrom, 240 N.J. 563, 570 (2020), and "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" Z.L., 440 N.J. Super. at 355 (quoting In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003)). "'[A] judicial declaration that a [person] poses a threat to the public health, safety[,] or welfare involves, by necessity, a fact-sensitive analysis.'" F.M., 225 N.J. at 505 (quoting Cordoma, 372 N.J. Super. at 535). "The burden is on the State to prove, 'by a preponderance of the evidence, that forfeiture is legally warranted.'" Id. at 508 (emphasis omitted) (quoting Cordoma, 372 N.J. Super. at 533).

### A.

G.D.P. argues the trial court prejudicially erred in its findings during the hearing. Specifically, he contends the court: (1) misclassified one of his firearms as an assault rifle under N.J.S.A. 2C:39-1(w) and improperly found he did not safely store his firearms; (2) erred by failing to make the required finding

10

under N.J.S.A. 2C:58-3(c)(5) he "lack[ed] the essential character of temperament necessary to be entrusted with a firearm"; and (3) denied him his Second Amendment right based upon allegations that do not rise to the required level and instead based it on an unconstitutional standard. We address these contentions in turn.

G.D.P. contends the court incorrectly considered one of his firearms an assault rifle, pointing to testimony wherein it was referred to as an "AR." He highlights the following exchange between the court and the prosecutor:

> THE COURT: [S]o the AR is in the basement, large green box, not secured by code, or box top of shelving.
>
> [PROSECUTOR]: Yes. Thank you, Judge.

This isolated exchange disregards the context of the discussion. The court, resuming the hearing after a break, advised the prosecutor its "notes show[ed] that the last bit of questioning was regarding top shelving," but the court did not "hear that whole question and answer." The prosecutor responded, "I'm sorry, Judge. Could you repeat what was . . . your understanding?" and then the above exchange occurred. The court was not asking the question of the prosecutor, as G.D.P. erroneously claims, but rather was reminding the prosecutor what his last question was. Thus, G.D.P.'s contortion of the record is unavailing.

A-1157-24

There was no mention of "assault rifle" during the hearing. The court, the prosecutor, and G.P. refer to the weapon as an "AR," and at no time did G.D.P. contest or explain the use of that term. The court's opinion mistakenly refers to the weapon as an "assault rifle" to distinguish it from the handgun owned by G.D.P., but there is no indication this misnomer factored into the court's conclusion.

Likewise, the court did not determine G.D.P. improperly stored the rifle; rather, the opinion summarized each party's testimony on this issue. Both G.P. and G.D.P. testified the rifle was stored in a large box or case on the top of a shelving unit in the basement. G.P. testified the box did not have a locking mechanism and G.D.P. said it did. She expressed concern the children had access to the basement, but G.D.P. testified he has discussed gun safety with the children and they "do not have access to the guns." However, the location and storage of the rifle was immaterial because the court's analysis focused on G.D.P.'s behavior.

N.J.S.A. 2C:58-3(c)(5) precludes the issuance of an FPIC "[t]o any person where the issuance would not be in the interest of the public health, safety[,] or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm." While the court did not

12

explicitly state G.D.P. "lack[ed] the essential character of temperament necessary to be entrusted with a firearm," the substance of the opinion addresses that very issue. Thus, we are satisfied the trial court applied the appropriate legal standard and predicated forfeiture of G.D.P.'s firearms on substantial, credible evidence in the record after conducting a thorough and fact-sensitive analysis.

G.D.P.'s argument the forfeiture violated his Second Amendment rights is also unavailing because we recently rejected the same constitutional challenges to N.J.S.A. 2C:58-3(c)(5). See In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 190-95 (App. Div. 2023). There, we upheld the constitutionality of the statute in light of the standard established under New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), because its restriction on possessing firearms is consistent with "this Nation's historical tradition of firearm regulation," and is not overbroad or impermissibly vague. M.U., 474 N.J. Super. at 163 (quoting Bruen, 597 U.S. at 17). We discern no reason to deviate from our decision.

B.

G.D.P. raises two additional constitutional arguments for our consideration. First, he argues, for the first time on appeal, he was denied his

right to procedural due process because the State failed to inform him of the specific statutory subsections or grounds it intended to rely upon until the hearing had begun. Second, he argues the State violated the Fifth Amendment's Takings Clause by failing to permit him to arrange transfer of his firearms to a registered firearms dealer under N.J.S.A. 2C:25-21(d)(3).

The Fourteenth Amendment of the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The New Jersey Constitution "embrace[s] the fundamental guarantee of due process." Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 239 (2008); N.J. Const. art. 1, ¶ 1. Our Supreme Court has, "from time to time, construed Article I, Paragraph 1 to provide more due process protections than those afforded under the United States Constitution." Ibid.

"The minimum requirements of due process . . . are notice and the opportunity to be heard." Id. at 240 (omission in original) (quoting Doe v. Poritz, 142 N.J. 1, 106 (1995)). "[D]ue process rights are found whenever an individual risks governmental exposure to a 'grievous loss.'" State ex rel. D.G.W., 70 N.J. 488, 501 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the

14

'liberty or property' language of the Fourteenth Amendment." Morrissey, 408 U.S. at 481. The revocation of an FPIC constitutes state action triggering due process protections.

We generally decline to consider an issue not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Neither exception is present here.

Even if we consider this belated claim, it is nevertheless unavailing. G.D.P. was provided prior written notice of the statutory basis on which the State sought forfeiture and a meaningful opportunity to be heard. The notice of petition advised:

> [T]he State of New Jersey, through the Office of the Union County Prosecutor, shall apply to the Superior Court. . . for an [o]rder prohibiting the return of your firearms/weapons seized and the revocation of any firearm permits and/or [FPIC] on the grounds that you are unfit and/or you pose a threat to the public in general or to a person or persons in particular and/or that you are subject to one or more of the disabilities set forth in N.J.S.A. 2C:58-3 and/or N.J.S.A. 2C:25-17 et. seq. and/or N.J.S.A. 2C:39-7.

G.D.P. was represented by counsel during the hearing. At the outset, counsel asked the basis on which the State was proceeding, and the State proffered both its belief "there's a mental disability with [G.D.P.], as well as it

15

is not in the . . . public interest, health, safety[,] or welfare of the community." Counsel did not seek an adjournment or indicate he was unprepared to proceed with the hearing based on the State's proffer. Therefore, G.D.P. was afforded the procedural process due to him: he had notice of the grounds on which the State sought forfeiture; and he was afforded a hearing wherein he had the opportunity to be heard.

We next consider G.D.P.'s Fifth Amendment's Takings Clause argument. "[T]he Legislature intended that a court should have the power and the responsibility to retain weapons on determining that the owner of those weapons is a threat 'to public health, safety[,] or welfare.'" J.W.D., 149 N.J. at 116 (quoting N.J.S.A. 2C:58-3(c)). "Weapons seized and retained under [N.J.S.A. 2C:58-3(c)] should be 'sold and the proceeds given to the defendant or the guns can be transferred at [the] defendant's request to someone who qualifies as a purchaser under N.J.S.A. 2C:58-1[] and has an appropriate permit or card authorizing the acquisition.'" Ibid. (quoting State v. Cunningham, 186 N.J. Super. 502, 513 (App. Div. 1982)).

G.D.P. contends he was not provided the opportunity to transfer his weapons to a purchaser, and the State does not dispute this point. The form order entered by the court contains an unchecked paragraph that permits the

defendant to sell or transfer weapons to certain individuals within a specific amount of time, or the weapons will be destroyed. Because both parties agree this provision should have been entered, we remand for the entry of an amended order accordingly.

To the extent we have not expressly addressed any remaining issues raised by G.D.P., it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part; remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-1157-24